IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.:  1:19CR559 |
| ) | |
| Plaintiff, ) | JUDGE SARA E. LIOI |
| ) | |
| v. ) | |
| ) | GOVERNMENT'S OBJECTIONS TO |
| ) | DEFENSE EXHIBITS AND MOTION IN |
| ) | LIMINE TO PRECLUDE CERTAIN |
| ) | PROPOSED EXPERT TESTIMONY |
| DEEPAK RAHEJA, ) | |
| FRANK MAZZUCCO, ) | |
| ) | |
| Defendants. ) | |

The United States of America, by and through its counsel, Michelle M. Baeppler, First Assistant United States Attorney, and Michael L. Collyer and Megan R. Miller, Assistant United States Attorneys, hereby objects to some of Defendants' exhibits. The government also asks the Court to preclude Defendant Raheja from attempting to elicit certain expert testimony.

**I.      INTRODUCTION**

While the government reserves the right to object at trial to evidence it believes is inadmissible, we register some objections now to put the Court and parties on notice that we believe some of the exhibits listed by the defendants are inadmissible and should not be mentioned in Opening Statements. In this way, the government hopes to avoid interruption of defense counsel's Opening Statements. The government notes that three categories of exhibits appear to be inadmissible on hearsay and/or relevance grounds. The government also asks the Court to preclude Defendant Raheja from attempting to elicit testimony from his retained medical anthropologist that "Dr. Raheja may not have believed he was acting in an illegal or unethical manner."

## II. PROCEDURAL HISTORY

This Court ordered Defendants to provide the government with reciprocal discovery 30 days before trial. While Defendant Sawhny provided some reciprocal discovery years ago, Defendants Raheja and Mazzucco provided the government with over two gigabytes of reciprocal discovery, including five expert reports, 28 days before trial on September 26, 2022,.[1] Defendants Raheja and Mazzucco gave their exhibit lists (a combined 856 exhibits) to the government on October 11, 2022.

The government has asked opposing counsel whether they still intend to introduce the exhibits discussed below and elicit the opinion regarding Dr. Raheja's possible intent but has not yet received a response, so we submit these Objections out of an abundance of caution to give the Court and the parties the benefit of additional advance notice and detail.

## III. ARGUMENT

### A. Defendant Mazzucco has Marked at Least 148 Exhibits that are Written Communications that Appear to be Hearsay.

The government previously moved to preclude defendants from attempting to introduce evidence about the conduct of others, including conduct that would excuse their actions on the theory that "everyone does it." At the motions hearing, defendants disclaimed such an intent, and the Court denied the government's motion as moot. It now appears that Defendant Mazzucco still intends to pursue a form of this same defense; specifically, that others had discussions about the Avanir speaker's bureau program and even though Mazzucco was not a

---

[1] Thus, even with the benefit of an inference that reciprocal discovery belies an intent to seek admission of the documents and data, the government had no ability to file motions in limine by the Court's deadline and has acted as quickly as possible to assess the more than 2 gigabytes of reciprocal discovery and over 865 exhibits (many with numerous pages and sub-parts) marked by Defendants Raheja and Mazzucco.

2

part of those discussions, he can somehow rely on them to establish the legitimacy of Mazzucco's conduct and beliefs. These written communications—148[2] separate emails/text messages (some with quite lengthy back-and-forth communications within a single exhibit) currently marked as exhibits by Defendant Mazzucco—are out-of-court statements to be offered in court for the truth of the matter asserted and are therefore inadmissible on hearsay grounds. They are also irrelevant for the same grounds raised by the government's previous motion *in limine*, as they are communications that are not made to Defendant Mazzucco (and none of them involve attorney advice or even compliance instructions) and thus could not have factored into his state of mind.

The Court should preclude mention and admission of these communications unless and until a basis for their admission is established.

      **B.**      **The Government's Press Releases Are Legally Irrelevant.**

Defendant Raheja's proposed exhibits 34 and 356 are press releases issued by the Department of Justice in connection with the Indictment in this case. The government anticipates that Defendant Raheja will attempt to use these press releases to improperly comment on the government's investigation in this case. "Generally, courts have viewed warily defense efforts to reshift the focus of a trial from the guilt or innocence of the defendant to the quality of the government's investigation." *United States v. Bell*, No. 17-20183, 2022 WL 1214157, at *2 (E.D. Mich. April 25, 2022); *see also United States v. Veal*, 23 F.3d 985 (6th Cir. 1994)

---

[2] We are attaching a chart of Defendant Mazzucco's numbered exhibits and an X in the column to the right to indicate which exhibits appear to be hearsay communications between third parties that do not include Mazzucco. At this point we are only flagging these types of communications—even if the communication included the defendant, that would not save it from a potential hearsay objection.

(affirming district court's exclusion of evidence offered to show the government's investigation was "sloppy" and noting "that the jury would not be called upon to determine whether the government's investigation had been good or bad"). The press releases issued by the Department of Justice in connection with this case are not evidence the government intends to introduce because they do not establish any of the elements of the crimes charged in the indictment. Having no bearing on Defendant Raheja's guilt or innocence, the government asks that such exhibits be excluded as irrelevant.

      C.      **Dr. Raheja's Awards and Qualifications Are Inadmissible**.

Dr. Raheja has marked as Exhibit 358 a series of his awards and medical qualifications. Dr. Raheja also has marked as Exhibits 352 and 353 two newspaper articles about a patient he treated in 1996. The government anticipates that his defense counsel intends to present this information to the jury in opening statement to personalize their client and attempt to impress the jury with his medical accomplishments. These exhibits are admissible, if at all, only if Dr. Raheja testifies. And even then, the exhibits themselves are inadmissible. Presenting Dr. Raheja's awards is an attempt to introduce impermissible prior good acts. Federal Rule of Evidence 404(b) precludes the use of other-acts evidence to prove a person's character, but it allows such evidence for other purposes, such as proving intent. Prior good acts, however, generally may not be used to show a predisposition not to commit crimes, as this Court has already ruled in connection with the government's motion in limine on this topic. (R. 262: Memorandum of Opinion, PageID 3031-34); *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (affirming district court's exclusion of evidence showing that on certain occasions defendant did favors for people who did not pay him bribes). Here, the fact that Dr. Raheja previously received awards or successfully treated other not similarly situated patients (the

4

articles precede the creation of Nuedexta) has no bearing on the intent necessary to commit the crimes charged in the present indictment.  *See United States v. Akers*, No. 7:19CR7, 2020 WL 1062988, at *6 n.13 (E.D. Ky. March 5, 2020) (stating it would exclude prior good acts evidence used to show defendant was a good doctor in the past).  The Court should preclude Dr. Raheja's counsel from using this information unless and until they establish a proper basis for their admission.

> **D.** **Dr. Raheja's Medical Anthropologist Witness Should be Precluded from Testifying that Dr. Raheja May Not Have Been Able to Form the Intent to Commit the Charged Crimes**.

In his reciprocal discovery, Dr. Raheja disclosed a report written by Lesley Jo Weaver, a self-described medical anthropologist, who is apparently prepared to opine on Dr. Raheja's mental state: "These cultural differences [between Dr. Raheja and co-defendants Hayslette and Mazzucco] and personal tendencies are significant enough that Dr. Raheja *may not have believed* he was acting in an illegal or unethical manner, or may have come across as doing so more sincerely than he actually did."  **Exhibit 1**, Report of Mary Jo Weaver, p. 3 (emphasis added).  This opinion is inadmissible and the Court should preclude its mention in Opening Statement and any attempt to elicit it should the defense call Ms. Weaver as a witness.

First, Federal Rule of Evidence 704(b) flatly prohibits this kind of testimony:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state orcondition that constitutes an element of the crime charged or of adefense.  Those matters are for the trier of fact alone.

Under this rule, "opinions that draw the ultimate conclusion regarding whether a defendant had the requisite intent to commit the crime charged are inadmissible." *United States v. Gallion*, 257 F.R.D. 141, 155 (E.D. Ky. 2009).  Further, "no expert witness may give opinion testimony regarding a defendant's intent or lack thereof." *Gallion* at 156; *see also United States v.*

5

*Warshak*, 631 F.3d 266, 324 (6th Cir. 2010) (holding that an expert witness is not permitted to opine on the issue of whether the defendant did or did not have the mental state constituting an element of the crime).

  Second, even if the proposed testimony could survive Evidence Rule 704(b), it should still be excluded under Evidence Rule 403.  In *United States v. Washington*, 106 F.3d 983, 1009 (D.C. Cir. 1997), the court of appeals upheld the district court's exclusion of expert testimony in support of an entrapment defense to police corruption charges.  The defendants proffered expert testimony from advisors to law enforcement agencies on corruption training who would have testified that police training was insufficient to prepare young police officers to identify and resist corrupt overtures and that the design and implementation of an undercover operation created a coercive environment and effectively limited the young officers' realistic options to resist.  *Id*.  By offering Ms. Weaver's opinion about the *possible* belief that Dr. Raheja had in his mind and his susceptibility to cultural influences during the course of the charged offenses, Defendant will violate the same prohibition on expert testimony that both usurps the jury's role and is unfairly prejudicial while lacking probative value.

6

IV.     CONCLUSION

The Court should preclude Defendants from mentioning the above-described exhibits and witness statements in their Opening Statements and from introducing them at trial.

>Respectfully submitted,
>
>MICHELLE M. BAEPPLER
>First Assistant United States Attorney
>
>/s/ Michael L. Collyer
>Michael L. Collyer (OH: 0061719)
>Megan R. Miller (OH: 0085522)
>Assistant United States Attorneys
>United States Court House
>801 West Superior Avenue, Suite 400
>Cleveland, OH 44113
>(216) 622-3744/3855
>Michael.Collyer@usdoj.gov
>Megan.R.Miller@usdoj.gov